**IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF NORTH CAROLINA
EASTERN DIVISION
Case No. 4:16-CR-00051-BO-1**

| | |
|---|---|
| UNITED STATES )  | |
| ) | REPLY TO UNITED STATES' |
| ) | SUPPLEMENTAL RESPONSE IN |
| v. ) | OPPOSITION TO DEFENDANT'S |
| ) | MOTION FOR COMPASSIONATE |
| ) | RELEASE |
| TERRY DONNELL HARRISON, ) | |
| ) | |
| Defendant. ) | |

Mr. Terry Donnell Harrison, through undersigned counsel, respectfully moves this Honorable Court to grant his Motion for Compassionate Release under 18 U.S.C. § 3582(c)(1)(A) based on the "extraordinary and compelling reasons" presented by his vulnerability to COVID-19. However, as verified herein and also attached to said Reply in Support of Compassionate Release pursuant to 18 U.S.C. § 3582(c)(1)(A)(i), Mr. Harrison has now properly exhausted his administrative remedies. (*See* Previously Submitted Exhibit A: Verification of Mr. Harrison's Exhaustion of his administrative remedies.) Mr. Harrison submitted his compassionate release request to the warden on June 25, 2020, more than thirty (30) days have elapsed, and Mr. Harrison has not yet been granted release. Mr. Harrison suffers from high blood pressure and has suffered from unexplained chest pain. Moreover, he has expressed to undersigned counsel the mental strain and psychological difficulty he has been experiencing being on lock down most of the day due to COVID-19, which has only served to compound his medical problems and also places him at the serious risk category of becoming severely ill from COVID-19. (*See Previously Submitted Exhibit* B: Bureau of Prisons Medical Records for Terry

Harrison; specifically, please *see* page 8 wherein it states that Mr. Harrison is suffering from "high blood pressure" (hypertension).)

Mr. Harrison has been suffering from these ailments for an extensive period of time, which further substantiates the impending need for compassionate release given that his immune system is seriously compromised. Mr. Harrison has not only had to endure suffering from high blood pressure, but his high blood pressure is further exacerbated by his chronic back pain which was brought on by serious injuries sustained from a serious motor vehicle accident. (*See* Docket Entry (D.E.) 32, Presentence Report (PSR), page 15, paragraph 56.) As referenced above, Mr. Harrison is also suffering from continued chest pain that he is not receiving proper medical care for because of the BOP's failure to render proper medical diagnosis and care. Furthermore, Mr. Harrison is designated to USP Hazelton in West Virginia, where at least two staff members have already been infected with COVID-19. (*See* https://www.bop.gov/coronavirus/ wherein the public is provided a "snap shot" of one time, which clearly is subject to change from moment to moment.) It is important to note that these numbers are rapidly increasing. As your Honor, the Honorable Chief Judge Boyle, and most other judges from the Eastern District of North Carolina, have granted such Compassionate Release Requests where it is appropriate to show this type of legally sanctioned mercy, it is respectfully requested that this Honorable Court also issue an order reducing Mr. Harrison's sentence to time served and/or home confinement given that it is appropriate to do so in Mr. Harrison's case as well. For example, please *see United States v. Roberto Pablo Gutierrez*, Crim. No. 5:11-CR-149-1-BR, ECF No. 156 (E.D.N.C. April 30, 2020).

## STATEMENT OF FACTS

Mr. Harrison was charged with a three-count Indictment wherein Counts 1, 2, and 3 charged Distribution and Possession with Intent to Distribute a Quantity of Cocaine Base (Crack) on January 26, 2016; January 29, 2016; and February 9, 2016, respectively, in violation of 21 U.S.C. §841(a)(1). On October 24, 2016 Mr. Harrison pled guilty in open Court to Count 2 of the Indictment and is now currently serving out a 96-month sentence. This Honorable Court also placed him on twelve years of supervised release. Mr. Harrison has been incarcerated since August 10, 2016 and his cited release date is for July 10, 2023.

As Mr. Harrison properly identified in his Compassionate Release Request to Warden Bryan M. Antonelli, that "he has a big chance of catching the coronavirus due to his high blood pressure", making him particularly vulnerable to this deadly Coronavirus pandemic. Disturbingly, this current COVID-19 outbreak has not been contained in the United States and certainly and sadly not within our prison walls either.

On June 25, 2020, Mr. Harrison filed a request for Compassionate Release reduction of his sentence with the Warden at USP Hazelton, B. Antonelli, who is currently serving as the Acting Complex Warden. On May 7, 2020 Mr. Harrison filed his Pro Se Motion for Compassionate Release with the United States District, Eastern District of North Carolina. Thus, it is respectfully submitted that although he has not proceeded in the best order of submitting matters, that this Honorable Court still find that he has satisfactorily pursued his administrative remedies given that all matters have been completed, as required by 18 U.S.C. § 3582(c)(1)(A). Accordingly, it is respectfully submitted that it is appropriate under these circumstances for this Honorable Court not to strictly construe the administrative exhaustion requirement in the case sub judice and as such, in light of the Mr. Harrison's pro se status find that

he has in fact exhausted his administrative remedies. *See Haines v. Kerner*, 404 U.S 519, 520 (1972).

## ARGUMENT

### I. Defendant has shown "Extraordinary and Compelling" Reason for a Sentence Reduction.

Section 603(b) of the First Step Act fundamentally changed the role of courts in the compassionate release process, vesting them with the authority to determine what constitutes extraordinary and compelling reasons for release. This pandemic, as applied to Mr. Harrison, is an extraordinary and compelling circumstance. COVID-19 presents an unprecedented challenge to the court system, jail populations, and society at large. Being that it is a novel virus, there are many unanswered questions about who is most at risk. Individuals with severe heart conditions, such as hypertension, are more at risk of experiencing deadly complications from COVID-19. https://www.cdc.gov/coronavirus/2019-ncov/need-extra-precautions/people-with-medical-conditions.html#serious-heart-conditions. Attorney General Barr's memo cited by the Government states, without evidence, that "every person over 40 has some health condition that could conceivably put that person at greater risk of succumbing to the coronavirus." Such uncorroborated and unsubstantiated claims by the Government has led to the spread of misinformation and confusion surrounding the deadliness of COVID-19. The notion that hypertension does not qualify as a serious condition has been rebutted by Judge Boyle previous decisions where a Defendant was granted compassionate release due to his underlying medical conditions being hypertension and obesity. *United States v. Stye Lamar Coleman* No. 4:10-CR-50-BO-1. The American College of Cardiology identified reports from New York City and Wuhan, China that noted higher rates of hypertension among severely ill individuals. https://www.acc.org/latest-in-cardiology/articles/2020/07/06/08/15/covid-19-and-hypertension.

Furthermore, during a study of over 5,500 people hospitalized due to COVID-19, 56% or those individuals have hypertension. *Id.* The seriousness of this virus in combination with individuals who have hypertension leaves a devastating mark on our health care system; one that cannot be simply stated or contemplated through Administrative memos citing no medical evidence.

Not only does Mr. Harrison have hypertension, he is also at increased risk for a cardiac event. (*See Previously Submitted* Exhibit B: Bureau of Prisons Medical Records for Terry Harrison; specifically, please see page 10 wherein it states that Mr. Harrison is at HIGH risk for a cardiac event in the future). Mr. Harrison's hypertension is not common as African Americans are at a higher risk of having hypertension than any other race. https://www.cdc.gov/bloodpressure/facts.htm. Mr. Harrison's hypertension and his risk of having a cardiac event leave him at an unreasonable risk of dying from the coronavirus. A recent study published in the Journal of the American Medical Association (JAMA) found that among 5,700 patients in New York City who were hospitalized with COVID-19, the most common underlying medical conditions were **hypertension** (56.6 percent), obesity (41.7 percent) and diabetes (33.8 percent). Safiya Richardson et al., *Presenting Characteristics, Comorbidities, and Outcomes Among 5700 Patients Hospitalized with COVID-19 in the New York City Area,* JAMA, available at https://jamanetwork.com/journals/jama/fullarticle/2765184. Similarly, as Judge Chuang noted in a recent opinion ordering the release of a defendant from the Central Treatment Facility in Washington, D.C., "as of March 2020, three-fourths of individuals who died from COVID-19 in Italy had hypertension." *United States v. Keaton*, No. TDC-18-0215, ECF No. 84 at *5 (D. Md. Apr. 23, 2020) (citing *Coreas v. Bounds*, No. TDC-20-0780, 2020 WL 1663133, at * 1 (D. Md. Apr. 3, 2020).

## II. BOP's Failure to Contain COVID-19 Spread

Contrary to what the Government claims, the efforts of the Bureau of Prisons to contain the spread of COVID-19 has fallen flat. In the 14 days since the filing of Defendants Reply to Governments Opposition to Compassionate Release on July 10, 2020, the number of positive cases within the BOP's control has nearly doubled with an additional 5 inmates succumbing to the virus. www.bop.gov/coronavirus/. In direct conflict with the Government's claims, "people in correctional and detention facilities are at greater risk for some illnesses, such as COVID-19, because of close living arrangements with other people." https://www.cdc.gov/coronavirus/2019-ncov/community/correction-detention/faq.html#People. The evidence tends to show that the BOP is failing to adequately protect their prison populations and the Government's claim to the contrary is without merit. Mr. Harrison's concerns are not "general" nor are they an attempt to play a "get out of jail free card" and the Government has shown no evidence to prove that point. The Government's Supplement Response tends to contain mere conjecture concerning the risks of COVID-19 and are just as dangerous as the spreading misinformation about the effectiveness of masks themselves.

## III. The Relevant § 3553(a) Sentencing Factors Warrant Reducing Mr. Harrison's Sentence to Time Served / Adding a Period of Home Confinement as a Condition of Supervised Release.

Under the compassionate release statute, when a defendant establishes the existence of extraordinary and compelling circumstances justifying relief, courts must consider the relevant sentencing factors of 18 U.S.C. § 3553(a) to determine whether a sentencing reduction or modification is warranted. 18 U.S.C. § 3582(c)(1)(A)(i). Here, Mr. Harrison's compromised physical health, and the unique danger he faces if he contracts COVID-19 while being incarcerated

especially when considering the cumulative effect of all medical factors impacting him and becoming severely ill, when combined with the other Section 3553(a) sentencing factors, clearly warrant relief.

First, Mr. Harrison was convicted of Distribution and Possession with Intent to Distribute a Quantity of Cocaine Base (Crack). Thus, while Mr. Harrison's offense conduct was certainly serious, it did not involve any weapons nor allegations of violence.

Second, continued incarceration is not necessary to protect the community from the crimes of the defendant.

Finally, in this case, like those cited above, a reduction or modification of Mr. Harrison's sentence would not diminish the seriousness of the offense, nor would it place the public in any danger. The extraordinary and compelling circumstances presented by the uncontrolled spread of COVID-19—compounded by the heightened risks faced by Mr. Harrison, whose ability to engage in basic self-protective measures is restricted and thus, warrant relief.

Moreover, Mr. Harrison has a suitable release plan. He has been in a long standing and solid relationship with Ms. Kachurie Melvin since about 2015. Ms. Melvin resides in Wilson, NC. He plans on residing with her and making sure to assist her financially through his anticipated employment at US Foods, Inc. in Zebulon, NC. He also believes that through such employment he will be able to secure the necessary health insurance so as to receive the proper and necessary medical care for his continued medical ailments and to have his chest pain properly diagnosed and treated before it could become life threatening. *See Previously Submitted* Exhibit A. Additionally, Mr. Harrison's brother, Kelvin Devon Harrison, is also committed to his brother's outside success. Mr. Kelvin Harrison attests to his brother's selfless transformation while being in custody. (*See* Previously Submitted Exhibit C: Photocopy Letter of Support by Kelvin

Devon Harrison.) Accordingly, if this Honorable Court grants his compassionate release, Mr. Harrison's brother and Ms. Melvin will do everything they can to support him (emotionally and otherwise) since their goals will certainly be aligned with both the Court's and Mr. Harrison's as well; that is, to compassionately permit him to receive the proper medical care and succeed on the outside while preventing him from having to unnecessarily and inhumanely further suffer and deteriorate at USP Hazelton.

## CONCLUSION

Mr. Harrison has demonstrated extraordinary and compelling reasons for compassionate release and respectfully requests this Honorable Court to reduce his sentence to time served and/or add a period of home confinement as a condition of supervised release.

Respectfully submitted, this the 27th day of July 2020.

                                                                GUIRGUIS LAW, PA

                                                                /s/ Nardine Mary Guirguis
                                                                Nardine Mary Guirguis
                                                                PANEL Attorney
                                                                434 Fayetteville St., Suite 2140
                                                                Raleigh, North Carolina 27601
                                                                Telephone: (919) 832-0500
                                                                Facsimile:  (919) 246-9500
                                                                nardine@guirguislaw.com

                                                                *Designation: CJA Appointed*

CERTIFICATE OF SERVICE

I hereby certify that the foregoing document was served upon the Assistant Attorney for the United States electronically at the following address:

>Rudy Renfer
>Assistant United States Attorney
>Rudy.Renfer@usdoj.gov
>150 Fayetteville Street, Suite 2100
>Raleigh, North Carolina 27601

This 27th day July 2020.

>GUIRGUIS LAW, PA
>
>/s/ Nardine Mary Guirguis
>Nardine Mary Guirguis
>PANEL Attorney